UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

ANTHONY B. WILLIAMSON                                                                PLAINTIFF
ADC #109343

V.                              No. 4:23-CV-545-DPM-BBM

STEPHANIE BUDNIK, VSM
Treatment Specialist, ADC;
JAMES GIBSON, Warden, ADC;
and DEXTER PAYNE, Director, ADC                                                   DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to United States District Judge D.P. Marshall Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommended Disposition. If you do not file objections, Judge Marshall may adopt this Recommended Disposition without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

I.     INTRODUCTION

On June 12, 2023, Plaintiff Anthony B. Williamson ("Williamson"), a prisoner in the Varner Supermax Unit of the Arkansas Division of Correction ("ADC"), filed a *pro se* Complaint pursuant to 42 U.S.C. § 1983, alleging Stephanie Budnik ("Budnik") retaliated against him by denying him access to the courts, and James Gibson ("Gibson") and Dexter

Payne ("Payne") condoned the behavior, in violation of his constitutional rights. (Doc. 2). Before Williamson may proceed with this action, the Court must screen his claims.[1]

## II.  WILLIAMSON'S CLAIMS

Williamson avers that, because he is a maximum-security prisoner, he can only access the law library through Budnik, the Varner Supermax "Treatment Specialist." (Doc. 1 at 1, 4).  Budnik makes rounds in Williamson's barracks twice a week to collect law library requests and distribute legal materials. *Id.* at 6.

Williamson alleges that he "never [had] an issue…receiving legal material from Ms. Budnik" before he filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on October 28, 2022. *Id.* at 5. In the months after he filed his Petition, however, Budnik failed to provide him the name of the Lincoln County Prosecutor and the "legal study material" he requested. *Id.*

For example, on January 4, 2023, Williamson complained to Budnik that he had not received his requested information and legal materials. *Id.* at 6. Budnik left to "see where [his] legal materials were," but she did not return to Williamson's cell that day. *Id.*

On January 10, 2023, after almost three months without receiving the legal materials he requested, Williamson began filing grievances against Budnik. *Id.* at 6, 11–16, 20–26,

---

[1] The Prison Litigation Reform Act ("PLRA") requires federal courts to screen prisoner complaints and to dismiss any claims that: (a) are legally frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(a) & (b). When making this determination, a court must accept the truth of the factual allegations contained in the complaint, and it may consider documents attached to the complaint and other judicial proceedings directly related to the matters as issue. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011); *Conforti v. United States*, 74 F.3d 838, 840 (8th Cir. 1996).

31, 42. Gibson and Payne found each of the grievances to be without merit. *Id.* at 11–12, 14–15, 20–21, 23–25, 31–32, 35–36, 39–40.

On February 7, 2023, Budnik refused to sign Williamson's grievance against her and directed him to have Sergeant K. Williams sign it instead. *Id.* at 6, 20. Sergeant Williams did, in fact, sign the grievance and processed it that day. *Id.* at 20. On February 21, 2023, Budnik provided Williamson a complete copy of the Federal Rules of Civil Procedure but only twenty pages of the case *Preiser v. Rodriguez*, 411 U.S. 475 (1973). *Id.* at 23, 26.

On March 14, 2023, Williamson asked Budnik to notarize a legal document. *Id.* at 7. Budnik responded that she did not have her notary stamp on her and suggested that she take the documents to her office to notarize. *Id.* at 7, 34. Williamson refused because he wanted the documents notarized in his presence and was afraid Budnik would hold on to the documents past his deadline. *Id.*

On March 21, 2023, Budnik provided Williamson a 1981 Post-Conviction Remedies book by Larry W. Yackle instead of the 2019 Post-Conviction Remedies book by Brian R. Means that he requested. *Id.* at 7–8. Williamson had a "mental and emotional breakdown" after he realized that he received the wrong book. *Id.* at 7. He resubmitted his request for the newer Post-Conviction Remedies book but, on March 28, 2023, Budnik again tried to give him the 1981 book. *Id.* at 8.

Williamson believes that Budnik deliberately hindered his access to legal materials as retaliation for filing his § 2254 Petition and grievances. *Id.* at 9. He claims that, had he been provided an adequate opportunity to do legal research, he had "a chance to be

3

successful" in each of his pending lawsuits. *Id.* at 8–9. Finally, Williamson states that, by denying his grievances against Budnik, Gibson and Payne were "deliberately indifferent to a culture of retaliatory misconduct." *Id.* at 9.

### III. DISCUSSION

To survive pre-service screening under the PLRA, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[L]abels and conclusions," a "formulaic recitation of the elements of a cause of action," and "naked assertions devoid of further factual enhancement" are insufficient to plead a plausible claim. *Iqbal*, 556 U.S. at 678.

#### A. Access to the Courts

Williamson's first claim is that Budnik denied him adequate access to the courts in violation of the First Amendment. He alleges that, because of Budnik's actions between October 2022 and March 2023, he missed the opportunity to be successful in his pending lawsuits.

The First Amendment encompasses an inmate's right to access to the courts "to attack their sentences, directly or collaterally" or "challenge the conditions of their confinement." *Lewis v. Casey*, 518 U.S. 343, 355 (1996); *Johnson v. Avery*, 393 U.S. 483, 489–90 (1969). Inmates, however, are not guaranteed the ability to file "everything from shareholder derivative actions to slip-and-fall claims." *Lewis*, 518 U.S. at 355. Moreover, to proceed on an access-to-courts claim, an inmate must allege facts showing that he was "actually injured" in regard to a "nonfrivolous and arguably meritorious underlying legal claim." *White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007) (citing *Christopher v. Harbury*,

4

536 U.S. 403, 413 (2002); *Lewis*, 518 U.S. at 353–55.). In order to show "actual injury," the inmate must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis*, 518 U.S. at 351; *see also Klinger v. Dept. of Corr.*, 107 F.3d 609, 617 (8th Cir. 1997). The injury may not be speculative or anticipatory. *See Harbury,* 536 U.S. at 416 (holding the "arguably meritorious" nature of a claim must be "more than hope").

Williamson identifies five lawsuits that Budnik's actions allegedly impacted: *Williamson v. Channell, II*, No. 60CV-16-3055 (Pulaski Cnty., Ark., Circuit Court) ("*Williamson I*");[2] *Williamson v. Payne, et al.*, No. 4:20-CV-1077-KGB-BD (E.D. Ark.) ("*Williamson II*"); *USA v. Johnson, et al.*, No. 4:19-CR-666-KGB-3 (E.D. Ark.) ("*Williamson III*"); *Williamson v. Payne*, No. 4:22-CV-1046-LPR-ERE (E.D. Ark.) ("*Williamson IV*"); and *Williamson v. Payne*, No. 4:23-CV-324-KGB-PSH (E.D. Ark.) ("*Williamson V*"). (Doc. 1 at 5, 7, 8–9, 30). The Court will examine each case in turn.

### 1. *Williamson I*, No. 60CV-16-3055 (Pulaski Cnty., Ark., Circuit Court)

*Williamson I* was a state Freedom of Information Act ("FOIA") action, not a direct or collateral attack on his sentence or a prison-conditions case implicating First Amendment protection. *Williamson I*, (Cmpl., June 7, 2016). Thus, any impairment of Williamson's ability to litigate *Williamson I* "is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration," and Williamson cannot

---

[2] Arkansas state court records are publicly available on the Arkansas Judiciary's website: caseinfo.arcourts.gov (last visited Nov. 14, 2023).

show that Budnik's actions prejudiced his ability to pursue this action.³ *Lewis*, 518 U.S. at 355.

### 2. *Williamson II*, No. 4:20-CV-1077-KGB-BD (E.D. Ark.)

In *Williamson II,* Williamson challenged his conditions of confinement in the Varner Supermax Unit by filing retaliation and access-to-courts claims pursuant to 42 U.S.C. § 1983. *See Williamson II*, (Doc. 53 at 2). That case was dismissed, however, and judgment was entered on February 28, 2022. *Williamson II*, (Docs. 67–68). Williamson's deadline to timely file an appeal expired on March 30, 2022—more than six months before Budnik allegedly began denying Williamson legal materials in October 2022. *See* FED. R. APP. P. 4(a)(1)(A). Thus, Williamson cannot show that Budnik's actions prejudiced his ability to pursue *Williamson II*.

### 3. *Williamson III*, No. 4:19-CV-666-KGB-3 (E.D. Ark.)

In *Williamson III*, Williamson was charged in a Superseding Indictment with conspiracy to possess with intent to distribute and to distribute methamphetamine in violation to 21 U.S.C. § 846. *Williamson III*, (Doc. 34). That indictment was later dismissed, upon motion of the United States, on August 16, 2022—more than two months before Budnik's alleged unconstitutional conduct. *Williamson III*, (Docs. 90–91). Therefore, Williamson cannot show that Budnik's actions prejudiced his ability to pursue *Williamson III*.

---

³ It should also be noted that, prior to the allegations contained in the Complaint, Williamson had not filed anything in his FOIA case for more than six years. *Williamson I*, (Docket Sheet). That court issued a show cause notice on March 9, 2023, to which Williamson *timely* responded. *Id.* (Notice, Letter to Court, and Motions, Mar. 9 & 22, 2023). However, the case was dismissed because Williamson failed to show good cause for the court to maintain the case on its docket. *Id.* (Order, Apr. 5, 2023).

6

### 4. *Williamson IV*, 4:22-CV-1046-LPR-ERE (E.D. Ark.)

In *Williamson IV*, Williamson filed the aforementioned October 28, 2022 habeas petition that he believes instigated Budnik's alleged retaliation. (Doc. 1 at 5). In that petition, Williamson challenged the 2019 ADC disciplinary convictions he received for introducing drugs into the ADC and attempting escape, among other violations. *Williamson IV*, (Doc. 2). Williamson named Defendant Payne as the respondent to that action. However, on November 11, 2022, United States Magistrate Judge Edie R. Ervin recommended that the petition be dismissed, prior to service, because the claims were not cognizable in a habeas action. *Williamson IV,* (Doc. 5). Judge Ervin also recommended that a certificate of appealability be denied and concluded that Williamson had not stated any viable § 1983 claims. *Id.* Williamson filed a timely objection to Judge Ervin's Recommendation on December 2, 2022. *Id.*, (Doc. 6).

On April 21, 2023, United States District Judge Lee P. Rudofsky rejected Williamson's objection and dismissed the habeas petition with prejudice. *Id.*, (Docs. 11, 12). Williamson appealed. *Id.,* (Doc. 15). On October 4, 2023, the Eighth Circuit Court of Appeals denied a certificate of appealability [4] and dismissed the appeal. *Id.*, (Docs. 21, 22). Considering all three levels of judicial review determined Williamson's habeas petition to be without merit, Williamson cannot plausibly argue that his claims in *Williamson IV* were "nonfrivolous and arguably meritorious." *White*, 494 F.3d at 680. Accordingly, Williamson cannot show that Budnik's actions prejudiced his ability to pursue *Williamson IV*.

---

[4] "A certificate of appealability may issue…only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3).

### 5. *Williamson V,* **No. 4:23-CV-324-KGB-PSH**

On April 4, 2023, Williamson filed *Williamson V*, a § 1983 complaint challenging the same 2019 disciplinary convictions he challenged in his earlier § 2254 habeas petition. *Williamson V*, (Doc. 2). On May 22, 2023, United States Magistrate Judge Patricia S. Harris recommended that the complaint be dismissed for failure to state a claim and that the dismissal be recommended as a "strike" under the PLRA. *Id.*, (Doc. 7). Williamson filed objections on June 7, 2023. *Id.*, (Doc. 8). That Recommendation remains pending.

Williamson does not explain how Budnik's alleged actions here—which primarily consist of denying Williamson access to a *habeas* book and a portion of a *habeas* case—prejudiced his ability to litigate adequately in *Williamson V*. Beyond speculation that he had "a chance to be successful" if he had full access to his requested materials, Williamson does not allege that he was prejudiced by a missed deadline or that he was unable to present his § 1983 claim to the court. *Id.* at 8–9. The closest Williamson comes to showing "actual injury" is alleging that the Lincoln County Prosecutor was dismissed in *Williamson V* because Budnik would not provide him that person's name. (Doc. 1 at 5). This allegation fails to state a claim for two reasons.

First, the Lincoln County Prosecutor was terminated as a defendant in *Williamson V* because Williamson failed to list him as a defendant in his Amended Complaint—not because Williamson was unable to provide the prosecutor's name. *Williamson V*, (Doc. 7 at 1, n.1). Second, the First Amendment right to access the courts requires prison authorities to provide prisoners with: (1) adequate law libraries; or (2) "adequate assistance from persons trained in the law." *Entzi v. Redmann*, 485 F.3d 998, 1004 (8th Cir. 2007) (quoting

8

*Bounds v. Smith*, 430 U.S. 817, 828 (1977)). The Court is aware of no clearly established case law extending this right so far as to require prison officials to affirmatively research and provide the identity of a prisoner's proposed defendant. Thus, to the extent Williamson claims that he was actually injured by Budnik's refusal to identify the Lincoln County Prosecutor, she would be entitled to qualified immunity on that claim. *See Story v. Foote*, 782 F.3d 968, 969 (8th Cir. 2015) (noting that the court is allowed to "consider the defense of qualified immunity in reviewing the district court's preservice dismissal").

Because Williamson fails to allege plausibly that any of Budnik's actions "actually injured" his underlying lawsuits, his access-to-the-courts claim should be dismissed without prejudice for failure to state a claim.

### B. Retaliation

Williamson's second claim alleges retaliation. He asserts that Budnik denied him access to legal materials in retaliation for his October 2022 habeas petition and that the retaliation continued after he filed grievances against her.

To state a § 1983 retaliation claim, Williamson must plead that: (1) he engaged in constitutionally protected activity; (2) Budnik took adverse actions against him that would chill a prisoner of ordinary firmness from engaging in that activity; and (3) his protected activities were the "but-for cause" of Budnik's adverse actions. *De Rossitte v. Correct Care Sols., LLC.*, 22 F.4th 796, 804 (8th Cir. 2022); *Santiago v. Blair*, 707 F.3d 984, 992 (8th Cir. 2013); *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019). Williamson engaged in constitutionally protected activity by filing a habeas petition and grievances. *Lewis v. Jacks*,

9

486 F.3d 1025, 1029 (8th Cir. 2007). His retaliation claim fails, however, on the other two prongs.

First, Budnik's actions would not deter a prisoner of ordinary firmness from continuing to file grievances and habeas petitions. "The ordinary-firmness test is designed to weed out trivial matters from substantial violations of the First Amendment." *Gonzalez v. Bendt*, 971 F.3d 742, 745 (8th Cir. 2020). Although not determinative, the Court can consider Williamson's actions in deciding what a prisoner of "ordinary firmness" would have done. *See Gonzalez*, 971 F.3d at 745; *see also Santiago*, 707 F.3d at 992 (citing *Garcia v. City of Trenton*, 348 F.3d 726, 729 (8th Cir. 2003)).

Here, Budnik's identified "adverse" actions against Williamson include (1) failing to provide the name of a county prosecutor; (2) bringing the wrong law book on two occasions; (3) declining to notarize legal documents when she did not have her notary stamp on her, but offering to take the documents to her office to notarize; (4) providing only twenty pages of a legal opinion; and (5) refusing to sign a grievance that Williamson had filed against her, but recommending another ADC official sign the papers. (Doc. 1 at 5–8, 20, 23, 26, 34). These "adverse" actions are of such a trivial nature that they would not deter a prisoner of ordinary firmness from filing grievances and lawsuits. *See Gonzalez*, 971 F.3d at 746 ("minor interference with an inmate's access to the administrative remedy process" were not sufficiently adverse to deter a prisoner of ordinary firmness). *Cf. Santiago*, 707 F.3d at 994 (holding threats and deprivation of clothes, bedding, running water, working toilet, and personal property were sufficiently adverse actions); *Lewis*, 486 F.3d at 1029 ("Retaliatory action that worsens an inmate's working conditions can be

sufficiently adverse to be actionable under § 1983."). In fact, despite having a "mental and emotional breakdown" from Budnik's actions (Doc. 1 at 7), Williamson continued to file lawsuits and fill out grievances, which undermines any notion that he was deterred from exercising his First Amendment rights. *See, e.g., Williamson v. Martin,* 4:23-CV-00533-LPR (E.D. Ark. June 9, 2023); *Williamson IV*; *Williamson V*; (Doc. 1 at 11–16; 20–26; 31–42).

Because Budnik's alleged actions would not deter a prisoner of ordinary firmness from exercising his First Amendment rights, Williamson's retaliation claim fails on this prong alone. Nevertheless, Williamson's allegations also fail to show a causal connection between Budnik's "adverse" actions and his protected activities.

In the prison context, "claims of unlawful retaliation must be treated with skepticism," and prisoners face a substantial burden in showing that a prison official's actions would not have occurred "but for" a retaliatory motive. *Sisneros v. Nix*, 95 F.3d 749, 752 (8th Cir. 1996); *see Beaulieu v. Ludeman*, 690 F.3d 1017, 1025 (8th Cir. 2012). "Speculative and conclusory allegations cannot support a retaliation claim." *Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996) (per curiam).

Williamson *speculates* that Budnik's retaliation began because of his October 2022 habeas petition, claiming he "never had an issue" getting legal materials before that date. But, he has provided no facts suggesting that Budnik was aware of the petition, which was dismissed prior to service on Defendant Payne. (See Doc. 1 at 5); *Williamson IV*, (Docs. 5, 11). Although Budnik was aware of Williamson's grievances as early as February 2023 (Doc. 1 at 6, 20), there is nothing about her alleged subsequent actions—having another

11

guard sign Williamson's grievance; providing twenty pages of a case; offering to notarize his documents in her office; and providing an older copy of a book—that indicate a retaliatory motive beyond pure speculation.

Because Budnik's trivial actions would not deter a prisoner of ordinary firmness from engaging in constitutionally protected conduct, and there are no allegations to support a "but-for" cause for her actions, Williamson failed to state a retaliation claim.

### C. Claims Against Defendants Gibson and Payne

Williamson's only allegations against Defendants Gibson and Payne are that they condoned Budnik's unconstitutional conduct by denying his grievances. (*See* Doc. 1 at 4–9). Because Williamson fails to allege any viable unconstitutional conduct by Budnik, his claims against Defendants Gibson and Payne also necessarily fail. *Mendoza v. United States Immigr. & Customs Enf't*, 849 F.3d 408, 420 (8th Cir. 2017) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 798–99 (1986)).

### D. Claims On Behalf of Inmate Danny Beckless

In addition to his own claims, Williamson alleges that Budnik "withheld" an affidavit from a fellow inmate, Danny Beckless, for eight days. (Doc. 1 at 6). "A prisoner cannot bring claims on behalf of other prisoners." *Martin v. Sargent,* 780 F.2d 1334, 1337 (8th Cir. 1985). Therefore, any claim brought by Williamson on behalf of Beckless should be dismissed.

## IV. CONCLUSION

Taking all facts in the Complaint as true and viewing them in a light most favorable to Williamson, he fails to allege facts demonstrating that Defendants violated his constitutional rights.

IT IS THEREFORE RECOMMENDED THAT:

1. Williamson's Complaint (Doc. 1) be DISMISSED, without prejudice, for failure to state a claim upon which relief may be granted.

2. The Court RECOMMEND that the dismissal count as a "strike" for the purposes of the Prison Litigation Reform Act. 28 U.S.C. § 1915(g); *see Gonzalez v. United States*, 23 F.4th 788, 789 (8th Cir.), *cert. denied*, 213 L. Ed. 2d 1065, 142 S. Ct. 2837 (2022).

3. The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an in forma pauperis appeal from any Order adopting this Recommendation would not be taken in good faith.

DATED this 18th day of March, 2024.

*/s/ Benecia Moore*
_____
UNITED STATES MAGISTRATE JUDGE